IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN WILLIAM SCHARNHORST, III                                                              PLAINTIFF

v.                          Civil No. 5:22-CV-05238-TLB-CDC

CHIEF DEPUTY JAY CANTRELL; MAJOR RANDALL DENZER;
CAPTAIN NOLAN AKE; LIEUTENANT MIKE ARNOLD;
LIEUTENANT AMANDA ARNOLD; LIEUTENANT CARRIER; CAPTAIN EAST;
SERGEANT ALLEN; SERGEANT PINEDA; SERGEANT FOSTER; SERGEANT
LUNSFORD; SERGEANT WORKMAN; SERGEANT BYRD; SERGEANT BRADSHAW;
SERGEANT B. MORGAN; SERGEANT BEAVERS; SERGEANT MALONE;
CORPORAL CAUDLE; CORPORAL FARBER; CORPORAL MULVANEY;
CORPORAL CARTER; CORPORAL CARPENTER; CORPORAL CORLEY;
CORPORAL SMITH; CORPORAL VANDENACK; CORPORAL VELASCO;
CORPORAL BREWER; CORPORAL TURNER; CORPORAL BOWMAN;
CORPORAL NUNZIATO; DEPUTY FRYE; DEPUTY BECK;
DEPUTY DRUMRIGHT; DEPUTY BILBREY; and DEPUTY MARTINEZ          DEFENDANTS

## MAGISTRATE'S REPORT AND RECOMMENDATION

Plaintiff John Scharnhorst, III, filed this 42 U.S.C. § 1983 civil rights action *pro se*. (ECF No. 1).   This is one of seven 42 U.S.C. § 1983 lawsuits Plaintiff has filed in this District over the last six months. *See also Scharnhorst v. Cantrell, et al.*, 5:22-CV-05243-TLB-CDC (W.D. Ark. Dec. 19, 2022); *Scharnhorst v. Cantrell, et al.*, 5:22-CV-05232-TLB-MEF (W.D. Ark. Nov. 28, 2022); *Scharnhorst v. Cantrell, et al.*, 5:22-CV-05218-TLB-CDC (W.D. Ark. Oct. 19. 2022); *Scharnhorst v. Cantrell, et al.*, 5:22-CV-05176 (W.D. Ark. Aug. 30, 2022); *Scharnhorst v. Helder, et al.*, 5:22-CV-05167-TLB-CDC (W.D. Ark. Aug. 10, 2022); *Scharnhorst v. Cantrell, et al.*, 5:22-CV-05138-TLB-MEF (W.D. Ark. July 15, 2022). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred

1

this case to the undersigned for the purposes of making a Report and Recommendation.

This Court previously granted Plaintiff's *in forma pauperis* (IFP) application. (ECF No. 3). The matter is now before the Court for preservice screening under 28 U.S.C. § 1915A *et seq.* of the Prisoner Litigation Reform Act ("PLRA"). Pursuant to 28 U.S.C. § 1915A, the Court is required to screen any complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[1] 28 U.S.C. § 1915A(a).

Upon that review and for the reasons outlined below, the undersigned recommends that the individual and official capacity claims against the following defendants be dismissed: Major Randall Denzer; Captain Nolan Ake; Lieutenant Mike Arnold; Lieutenant Amanda Arnold; Lieutenant Carrier; Captain East; Sergeant Allen; Sergeant Pineda; Sergeant Foster; Sergeant Lunsford; Sergeant Workman; Sergeant Byrd; Sergeant Bradshaw; Sergeant Morgan; Sergeant Beavers; Sergeant Malone; Corporal Farber; Corporal Mulvaney; Corporal Carter; Corporal Carpenter; Corporal Corley; Corporal Smith; Corporal Vandenack; Corporal Velasco; Corporal Brewer; Corporal Turner; and Corporal Bowman. Plaintiff's claims against other Defendants will proceed as discussed below.

## BACKGROUND

The Complaint names thirty-five defendants in their official and individual capacities and identifies four claims.[2]

Plaintiff first alleges that on November 18, 2021, he was placed in a freezing, filthy, over-

---

[1] Plaintiff was a pretrial detainee at the Washington County Detention Center (WCDC) at the time he filed this action. (ECF No. 1 at p. 1). Since that time, publicly accessible Arkansas state court records show that Plaintiff resolved his open criminal case in Washington County, Arkansas. *State v. Scharnhorst*, 72CR-21-1768 (Ark. Dist. Ct. Aug. 6, 2021) (Ark. Court Connect). Plaintiff is currently in custody on pending state criminal charges in Benton County, Arkansas. *State v. Scharnhorst*, 04CR-23-136 (Ark. Dist. Ct. Jan. 20, 2023) (Ark. Court. Connect).
[2] Although Plaintiff lists thirty-four defendants in his Complaint, his numbering is off by one.

crowded booking cell at the WCDC when it was 21 degrees Fahrenheit. *Id.* Plaintiff claims that he was wearing a t-shirt and shorts at the time and although "everyone" complained and asked to have the heat turned up or to be given blankets, they were told "a maintenance request is in on it." (ECF No. 1 at 5). According to Plaintiff, the HVAC system regularly malfunctions, and it often takes days for the maintenance manager, Corporal Sam Caudle, to fix it. *Id.* at p. 6. As another example, Plaintiff alleges that on January 20, 2022 – the day he and twenty other detainees were diagnosed with COVID-19 – the heat stopped working in R-block. *Id.* Plaintiff contends that "for 4 days [they] nearly froze to death while begging for extra blankets," but Lieutenant Arnold and Captain East denied their requests. *Id.* Plaintiff contends that the HVAC system was not repaired for days. *Id.* Plaintiff also claims that Sgt. Bradshaw responded saying, "[m]aintenance has been notified." *Id.* Plaintiff further claims that on August 1, 2022, the HVAC quit working on Q-block and the temperature became "sweltering," but Major Denzer, Corporal Caudle, and Lt. Amanda Arnold again neglected the issue. *Id.* at 6. Plaintiff reports that Sgt. Malone responded to his grievances with: "[M]aintenance request already in." *Id.*

      In support of his claim against the defendants in their official capacities, Plaintiff claims that "subjecting detainees to inhumane conditions of confinement is completely acceptable, common widespread practice, trained, condoned and encouraged by the management down through the entire chain of command." *Id.* at p. 6. According to Plaintiff, it is "standard operating procedure" to violate detainees' civil rights and that it is a "common occurrence" to "leav[e] detainees in freezing temps or sweltering conditions." *Id.*

      Plaintiff's second claim alleges that from December 10, 2021, until he moved to a different cell on February 1, 2022, he reported to every floor guard that the toilet in his cell was leaking

3

"foul water" and he also filed multiple grievances about the issue. (ECF No. 1 at p. 7). According to Plaintiff, he was given "half blankets" to soak up the water, and many guards documented the issue and filed maintenance requests. *Id.* Plaintiff alleges that Sgt. Byrd took photographs of the condition but Cpl. Sam Caudle both "neglected the problem and was allowed to neglect the problem." *Id.*

Plaintiff further claims that from July 10, 2022, until November 10, 2022, he notified every floor guard about a problem with the plumbing that was causing his toilet to fill with sewage from other cells. *Id.* According to Plaintiff, this problem caused his toilet to fill to the rim with raw sewage, rendering his toilet unusable. *Id.* Plaintiff claims that he subsequently "flooded" the kiosk system in every category notifying everyone about the problem, but rather than address the issue, Corporal Mulvaney "berated" him for "abusing the system." *Id.* at pp. 7-8. Plaintiff contends that he "flooded" the grievance system again on July 19, 2022, asking WCDC staff to repair a clogged sewer drain, but no action was taken; later that night, the sewer backed up and raw sewage flooded the mezzanine, his cell, several cells on Q-block, and flowed down into the dayroom. *Id.* at p. 8. By this time, Plaintiff claims that he had not had a usable toilet in his cell for five days and had been filing grievances about this issue for nine. *Id.* In response to his grievances, Plaintiff contends that he was told that "maintenance has been notified," but "it is a well-known fact that Cpl. Sam Caudle is lazy, apathetic, and displays a complete disregard for the maintenance of the detention center." *Id.* According to Plaintiff, the problem persisted even after the plumbing had been snaked and he was moved to K-block. *Id.* Plaintiff claims that the problem was finally resolved by White on November 11, 2022. *Id.* Plaintiff contends that he requested a toilet brush, but Cpl. Farber did not give him one, even though he filed grievances about this issue. *Id.* In

4

support of his claims against the defendants in their official capacities, Plaintiff claims that the WCDC "is plagued with plumbing problems which go unaddressed for months, everyone knows it, Caudle does nothing about it and nobody cares enough to do anything about it. He is protected from on high by Tim Helder and Jay Cantrell." *Id.* at p. 9.

Third, Plaintiff alleges that when he moved into cell 24 in A-1, he immediately notified staff that the light was broken. *Id.* According to Plaintiff, even though he filed numerous grievances about it and was repeatedly told that "maintenance has been notified," Cpl. Sam Caudle did nothing to repair the light. *Id.* Plaintiff contends that without a functioning light, he was "left in a dark cell for weeks." *Id.* Plaintiff alleges that "everyone" knew about the broken light: On September 18, 2022, Sgt. Morgan came into his cell and inspected the light; Cpl. Vandenack inspected the light at Plaintiff's request on or about August 23, 2022; and Sgt. Foster told him "to be patient." *Id.* In support of his claim against the defendants in their official capacities, Plaintiff claims that Tim Helder and Jay Cantrell "do nothing to ensure the maintenance of the jail" and that "it is perfectly acceptable to Randall Denzer" that "Sam Caudle refuses to make repairs to all sorts of things." *Id.* at pp. 10, 13.

Fourth, Plaintiff alleges that he has complained about the general conditions of the WCDC for over a year without a satisfactory response from WCDC staff. (ECF No. 1 at p. 11). Plaintiff claims that the poor condition of the WCDC is due to the deliberate indifference of WCDC staff. Plaintiff contends that "the ceilings and walls are coated in black mold due to roof leaks, malfunctioning HVAC caused by Sam Caudle's neglect, filthy ductwork, and vents." *Id.* Plaintiff further claims that the expansion joints in the concrete floors are filled with "feces, urine, rotting food, hair, fingernails, etc., and breed maggots and flying insects." *Id.* According to Plaintiff, the

defendants refuse to clean up after meals, they throw trash on the floor, and they fail to properly clean the facility. *Id.* Plaintiff alleges that Mulvaney has saved video of Lieutenant Mike Arnold throwing trash on the floor in front of Captain Ake. *Id.* Plaintiff contends that Frye, Beck, Nunziato, Drumright, Bilbrey, and Martinez "have used the issue of filth to harass and antagonize [him] by forcing themselves into [his] cell with brooms and mops contaminated with urine and feces and spreading it all over [his] floor." *Id.*

Plaintiff requests compensatory and punitive damages; that Sam Caudle be fired without a pension or any other type of benefits or compensation; that a third-party detainee advocate be installed at the WCDC at the county's expense to oversee jail operations; and that Jay Cantrell and Randall Denzer issue a public apology to past and present detainees. (ECF No. 1 at p. 13).

## LEGAL STANDARD

Under the PLRA, the Court is obliged to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a pro se complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon,* 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

The rule of liberal construction, however, does not excuse a pro se plaintiff from alleging enough facts to support his claims. *Stone v. Henry*, 364 F.3d 912, 914 (8th Cir. 2004). Thus, even though a plaintiff is proceeding pro se, the district court will not "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Id.* at 915.

## ANALYSIS

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege a violation of a constitutional right committed by a person acting under color of state law." *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006). Plaintiff's claims all concern the conditions of his confinement at the Washington County Detention Center. Accordingly, Plaintiff's claims are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010).

Pursuant to the Fourteenth Amendment, "a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Morris*, 601 F.3d at 809. To determine whether conditions rise to the level of punishment, plaintiffs must either (1) "show that the conditions were intentionally punitive," *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (2020), or (2) "if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* "If the conditions are found to be arbitrary or excessive, it is permissible to infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979) (internal quotations omitted)).

Recognizing that courts consider the "totality of the circumstances [] of confinement and

7

not any particular condition in isolation," *Bell*, 441 U.S. at 909, this Court considers the whole Complaint – and not individual claims – in determining whether it states a plausible conditions of confinement claim.

### A. Individual Capacity Claims

Plaintiff names thirty-five defendants in their individual and official capacities. To begin, the Court first considers whether Plaintiff has established a cause of action against each of the defendants in their individual capacities.

To establish liability against officials in their individual capacity, "the plaintiff must show that the official, acting under color of state law *caused* the deprivation of a federal right." *Handt v. Lynch*, 681 F.3d 939, 943 (8th Cir. 2012). Put another way, it is not enough for a plaintiff seeking relief from a defendant in the defendant's individual capacity to allege that his rights were violated; the plaintiff must instead allege that his rights were violated *by the defendant*. And those allegations must at a minimum be plausible to be afforded the usual presumption of truth at the pleading stage. *See Twombly*, 550 U.S. at 570.

**1. Individual Capacity Claims Against Defendants Lieutenant Carrier, Sergeant Allen, Sergeant Pineda, Sergeant Lunsford, Sergeant Workman, Sergeant Beavers, Corporal Carter, Corporal Carpenter, Corporal Corley, Corporal Smith, Corporal Velasco, Corporal Brewer, Corporal Turner, and Corporal Bowman**

Here, although Plaintiff identifies thirty-five defendants, he fails to allege any particularized facts about how many of those named defendants allegedly violated his constitutional rights.

Specifically, of the thirty-five named defendants, there are no particularized allegations against fourteen of them: Lieutenant Carrier, Sergeant Allen, Sergeant Pineda, Sergeant Lunsford, Sergeant Workman, Sergeant Beavers, Corporal Carter, Corporal Carpenter, Corporal Corley,

Corporal Smith, Corporal Velasco, Corporal Brewer, Corporal Turner, and Corporal Bowman. Although not explicit, all these defendants save two – Lieutenant Carrier and Corporal Turner – appear to be included in Plaintiff's report that he notified "every floor guard" about the leaking toilet in his cell. (ECF No. 1 at p. 7). And that he notified "every floor guard" from July 10, 2022, until November 10, 2022, about the plumbing problem causing his toilet to fill with sewage. *Id.*

In so doing, it appears that Plaintiff seeks to establish individual liability against every one of those floor guards. This is simply insufficient to establish individual liability under § 1983. "[A] plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added). Although Plaintiff does not include Lieutenant Carrier and Corporal Turner in these groups of notified floor guards, a review of the Complaint reveals Plaintiff has made no particularized allegations against them.   Accordingly, this Court recommends that all individual capacity claims against the following defendants be dismissed: Lieutenant Carrier, Sergeant Allen, Sergeant Pineda, Sergeant Lunsford, Sergeant Workman, Sergeant Beavers, Corporal Carter, Corporal Carpenter, Corporal Corley, Corporal Smith, Corporal Velasco, Corporal Brewer, Corporal Turner, and Corporal Bowman.

2. **Individual Capacity Claims Against Lt. Ake, Major Denzer, Sgt. Bradshaw, Lt. A. Arnold, Sgt. Malone, Sgt. Byrd, Cpl. Mulvaney, Sgt. Morgan, Cpl. Vandenack, Sgt. Foster**

This Court addresses the remaining twenty-one defendants in two groups. The first group consists of claims against Lt. Ake, Major Denzer, Sgt. Bradshaw, Lt. A. Arnold, Sgt. Malone, Sgt. Byrd, Cpl. Mulvaney, Sgt. Morgan, Cpl. Vandenack, and Sgt. Foster.

Plaintiff alleges that when the HVAC quit working for days, he notified Sgt. Bradshaw who advised him that maintenance had been notified and Sgt. Malone responded to his grievance. (ECF No. 1 at p. 6). Similarly, Plaintiff contends that he complained to Lt. A. Arnold and Major Denzer about the malfunctioning HVAC system on August 1, 2022, but the "issue was again neglected." (ECF No. 1 at p. 6). And he claims Sgt. Morgan and Cpl. Vandenack inspected the broken light fixture in his cell but the problem persisted, and Sgt. Foster told him "to be patient." (ECF No. 1 at p. 10). Plaintiff claims that Sgt. Byrd took pictures of the leaky toilet in his cell. (ECF No. 1 at p. 7). And Plaintiff contends he met with Lt. Ake in-person to address his concerns about his conditions of confinement. In making such claims, Plaintiff does not allege any other particularized facts concerning these defendants' involvement in the operation of the detention center generally, or the HVAC and plumbing systems specifically, or their responsibility to fix broken light fixtures or leaky toilets. Rather, Plaintiff appears to be asserting that these defendants are liable simply because he made them aware of the problem. However, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Twombly*, 550 U.S. at 570. Because Plaintiff fails to allege that, as part of their job duties, these defendants were responsible for maintenance and repairs of the WCDC, simply noting that they were aware of maintenance problems does not make them liable under 42 U.S.C. § 1983.

Further, to the extent that Plaintiff seeks to establish liability against defendants who responded to his grievances, such as Sgt. Malone, it is well established that a grievance procedure does not confer a substantive right that is actionable under § 1983. *See Buckley v. Burrow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam); *see also Dockery v. Houston*, 229 F. App'x 428, 428 (8th Cir. 2007) (per curiam) (plaintiff "cannot sue for allegedly false statements in a grievance response"). To the extent that Plaintiff seeks to establish liability against Cpl. Mulvaney for "berat[ing]" him for "abusing the system" by "flooding the kiosk" with grievances, Plaintiff likewise does not state a cognizable § 1983 claim. First, "verbal threats and name calling are usually not actionable under § 1983." *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993). Second, even though the "filing of a prison grievance [ ] is a protected First Amendment activity," *Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009), Plaintiff fails to establish a prima facie case of retaliatory discipline because there are no allegations that he was disciplined for "flooding the kiosk with grievances." *Id.* Accordingly, this Court recommends dismissal of the individual capacity claims against Lt. Ake, Sgt. Bradshaw, Lt. A. Arnold, Major Denzer, Sgt. Byrd, Sgt. Morgan, Cpl. Mulvaney, and Cpl. Vandenack.

3. **Individual Capacity Claims Against Corporal Sam Caudle, Lieutenant Arnold, Captain East, Corporal Farber, Deputy Frye, Deputy Beck, Corporal Nunziato, Deputy Drumright, Deputy Bilbrey, and Deputy Martinez**

The second group of defendants – including Corporal Sam Caudle, Lt. Arnold, Captain East, Corporal Farber, Deputy Frye, Deputy Beck, Corporal Nunziato, Deputy Drumright, Deputy Bilbrey, and Deputy Martinez – warrants additional discussion.

Pretrial detainees "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)); *see*

11

*also Green v. Baron*, 879 F.2d 305, 309 (8th Cir. 1989) (government entities generally "cannot deny basic human necessities to persons in custody" which include "light, heat, ventilation, sanitation, and a proper diet"). In reviewing the totality of the plaintiff's confinement, courts focus on the conditions and length of Plaintiff's exposure to these conditions. *Smith v. Copeland*, 87 F.3d 265, 268-69 (8th Cir. 1996) (no constitutional violation where pretrial detainee was subjected to overflowing toilet for four days); *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (deprivation of clothes, running water, hygiene supplies, blanket, and mattress for four days did not violate inmate's Eighth Amendment rights).

Plaintiff alleges the WCDC HVAC system is not properly maintained, causing the system to malfunction, and leaving him "freezing" for day(s) or "sweltering;" that he "was left in a dark cell for weeks" because the light fixture in his cell was broken; and that the toilet in his cell leaked for days and when he was eventually moved to a different cell, the plumbing backed up, causing his toilet to be unusable for five days and eventually leading to the toilet overflowing with sewage into other areas of the facility. (ECF No. 1 at pp. 5-10). Plaintiff also claims that the failure to properly maintain the HVAC system over time has caused black mold to form on the walls, a condition of confinement he experienced for a year during his confinement at the WCDC. (ECF No. 1 at p. 11). Plaintiff alleges that Defendant Sam Caudle is responsible for maintaining the HVAC and plumbing and repairing broken light fixtures. (ECF No. 1 at pp. 6, 10). For the purposes of preservice screening, the Court finds that the totality of the circumstances establishes a plausible claim that these conditions "do not relate to a legitimate government purpose or [are] excessive in relation to that purpose," *Stearns*, 957 F.3d at 907, particularly considering that Plaintiff alleges that he endured these conditions over the course of his confinement.

Second, Plaintiff claims that Defendants Frye, Beck, Nunziato, Drumright, Bilbrey, and Martinez intentionally spread feces and urine all over his cell with contaminated mops and brooms. (ECF No. 1 at p. 12).  Here, again, for the purposes of preservice screening, the Court finds that Plaintiff has established a plausible conditions-of-confinement claim against these defendants – Defendant Sam Caudle, Frye, Beck, Nunziato, Drumright, Bilbrey, and Martinez – in their individual capacities.

This Court draws a distinction, however, and recommends dismissal of Plaintiff's individual capacity claims alleging that Defendants Lt. Arnold and Cpt. East refused to give him a blanket when he was "freezing;" that Defendant Cpl. Farber refused to give him a toilet brush; and that Lieutenant Mike Arnold threw trash on the floor on two occasions. "Not every deprivation [] rises to the level of punishment under the due process clause [of the Fourteenth Amendment]." *Green*, 879 F.2d at 310. There is a certain "*de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 n. 21; *see Stickley v. Byrd*, 703 F.3d 421, 424 (8th Cir. 2013) (denial of additional toilet paper did not violate detainee's constitutional rights where detainee had available other methods of cleaning himself when he ran out of toilet paper).

Here, Plaintiff does not allege that he was denied all cleaning supplies, only the specific item he had requested. Although Plaintiff claims that he was "freezing" without a blanket, he does not allege that he suffered this condition for long. *Cf. Smith*, 87 F.3d at 269 (explaining that the "length of time a prisoner is subjected to harsh conditions is a critical factor" in considering conditions-of-confinement claims).  And although Plaintiff clearly suffered some discomfort while being held in the booking cell wearing shorts and a t-shirt when it was 21 degrees Fahrenheit, discomfort, by itself, does not violate the Constitution. *Bell*, 441 U.S. at 534, 548 at n.19.

13

### 4. Supervisory Liability

Naming Chief Deputy [now Sheriff] Jay Cantrell as a defendant, Plaintiff asserts that "[Sam Caudle] is protected from on high by Tim Helder and Jay Cantrell," (ECF No. 1 at p. 9), and "Tim Helder and Jay Cantrell do nothing to ensure the maintenance of the jail," (ECF No. 1 at pp. 10,13).[3] Although Plaintiff's allegations against Defendant Jay Cantrell are in the context of attempting to establish official capacity claims against the defendants, this Court, recognizing that *pro se* complaints are to be liberally construed, considers whether Plaintiff has established an individual capacity claim against Cantrell on a failure to supervise or train theory.

Liability in a § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). Respondeat superior – the theory that a supervisor is responsible for the torts of his subordinates – is not a basis for liability under 42 U.S.C. § 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Kulow v. Nix*, 28 F.3d 855, 858 (8th Cir. 1994)). Instead, for a supervisor to be liable under § 1983 on a theory of "failure to supervise or failure to train," the plaintiff must show that the supervisor's "failure to supervise and train amounts to deliberate indifference to the rights of the persons with whom [the tortfeasor] came into contact." *Doe v. Fort Zumwalt R-II School Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

To establish that Chief Deputy Jay Cantrell violated Plaintiff's constitutional rights on a failure to supervise theory, Plaintiff must show that Chief Deputy Jay Cantrell: "(1) Received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial

---

[3] Although Plaintiff references Tim Helder, he is not listed as a defendant in this matter. (ECF No. 1 at pp. 1-4). Accordingly, this Court does not discuss any of the allegations against him.

14

action; and (4) that such failure proximately caused injury to [Plaintiff]." *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010). Further, to establish liability on a "failure to train" theory, the failure to train must amount to "deliberate indifference to the rights of persons with whom police came into contact." *Id.* The Plaintiff must also "prove that the alleged failure to train 'actually caused' the constitutional deprivation." *Id.*

Deliberate indifference, moreover, is a "stringent standard of fault." *Doe v. Fort Zumwalt R-II School Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019) (quoting *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "A pattern of similar constitutional violations . . . is 'ordinarily necessary' to demonstrate deliberate indifference . . . ." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Alternatively, a plaintiff may show that "the need for more supervision or training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers [ ] can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *Canton*, 489 U.S. at 389).  In either case, the supervisors' failure to train or supervise must be "the moving force behind the constitutional violation." *Id.*

As a preliminary matter, Plaintiff does not plead any facts suggesting that as a part of his duties, Chief Deputy Jay Cantrell supervises the detention center staff.  Assuming this true by making all reasonable inferences in Plaintiff's favor at this stage, the Court finds that Plaintiff has established a plausible individual capacity claim against Chief Deputy Jay Cantrell on a "failure to train or supervise" theory.

### 5. Official Capacity Claims

Turning to Plaintiff's official capacity claims, such a claim is functionally equivalent to claims against the official's employer, or, in this case, Washington County, Arkansas. *See Liebe*

*v. Norton*, 157 F.3d 574, 578-79 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Put another way, an official capacity claim alleges that the governmental entity *itself* caused the constitutional violation at issue. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). To prevail on an official capacity claim, the plaintiff must establish that "the constitutional violation has been committed pursuant to an official custom, policy, or practice." *Granda v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007).

At this stage, this Court does not recommend that claims against Defendants Sam Caudle, Frye, Beck, Nunziato, Drumright, Bilbrey, Martinez, or Jay Cantrell in their official capacities be dismissed. **However, this Court recommends that the official capacity claims against all other defendants named in this cause of action be dismissed as redundant**. *See Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) (finding that district court properly dismissed claim against individual defendant named in her official capacity as redundant against the claims against the school district).

## CONCLUSION

For the reasons outlined above, the undersigned recommends that:

(1)  Plaintiff's individual and official capacity claims against the following defendants be **DISMISSED**: Major Randall Denzer; Captain Nolan Ake; Lieutenant Mike Arnold; Lieutenant Amanda Arnold; Lieutenant Carrier; Captain East; Sergeant Allen; Sergeant Pineda; Sergeant Foster; Sergeant Lunsford; Sergeant Workman; Sergeant Byrd; Sergeant Bradshaw; Sergeant Morgan; Sergeant Beavers; Sergeant Malone; Corporal Farber; Corporal Mulvaney; Corporal Carter; Corporal Carpenter; Corporal Corley; Corporal Smith; Corporal Vandenack; Corporal Velasco; Corporal Brewer; Corporal Turner; and Corporal Bowman; and

16

(2) Plaintiff's individual and official capacity claims against Chief Deputy Jay Cantrell, Corporal Sam Caudle, Deputy Frye, Deputy Beck, Corporal Nunziato, Deputy Drumright, Deputy Bilbrey, and Deputy Martinez **SURVIVE REVIEW AND SHALL PROCEED.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of January 2023.

*/s/ Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

17