IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN WILLIAM SCHARNHORST, III                                              PLAINTIFF

      v.           Civil No. 5:22-CV-05238-TLB-CDC

CHIEF DEPUTY JAY CANTRELL; CORPORAL CAUDLE;
CORPORAL DOMINICK NUNZIATO; DEPUTY FRYE;
DEPUTY BECK; DEPUTY DRUMRIGHT; DEPUTY BILBREY; and
DEPUTY MARTINEZ                                                             DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff John William Scharnhorst, III, a prisoner, has initiated the above-captioned civil rights action pursuant to 42 U.S.C. § 1983, generally alleging that his constitutional rights were violated while detained at the Washington County Detention Center ("WCDC"). *See* (ECF No. 1). United States District Judge Timothy L. Brooks has referred this case to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), and the matter is before the Court on Defendants' Supplemental Motion for Summary Judgment. (ECF No. 78). Plaintiff has responded in opposition to Defendants' Motion. (ECF No. 84). For reasons set forth below, the undersigned recommends Defendants' Supplemental Motion for Summary Judgment be **GRANTED.**

          **I.**      **PROCEDURAL POSTURE**

This Court previously described the background of this case in its Report and Recommendation denying Plaintiff's Motion for Contempt, (ECF No. 64), and in its Report and Recommendation denying, in part, and granting, in part, Defendants' Motion for Summary

Judgment, (ECF No. 74). That background is incorporated herein by reference.

Relevant here, upon review of Defendants' Motion for Summary Judgment, this Court recommended: (1) that the motion be denied with respect to Plaintiff's individual capacity claims against Defendants Fry,[1] Beck, Nunziato, Drumright, Bilbrey, and Martinez for "using the issue of filth to harass and antagonize [him] by forcing themselves into [his] cell with brooms and mops contaminated with urine and feces and spreading it all over [his] floor," (ECF No. 1, p. 12), and (2) that the motion be granted in all other respects. *See* (ECF No. 74). With respect to this claim, however, this Court directed the Defendants to file a supplemental motion for summary judgment construing Plaintiff's claim as one for First Amendment retaliation. *Id.* Judge Brooks adopted these recommendations without objection. (ECF No. 75).

After requesting and receiving an extension of time to respond, *see* (ECF No. 76-77), Defendants filed a Supplemental Motion for Summary Judgment incorporating by reference its filings in support of its original Motion for Summary Judgment pursuant to Fed. R. Civ. P. 10(c), along with a memorandum in support. *See* (ECF No. 78-79). Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to a claim against Defendants Beck, Drumright, Frye, Nunziato, Bilbrey and Martinez ("Defendants") for retaliation,[2] that there is no

---

[1] Defendant Fry's name appears misspelled throughout Plaintiff's pleadings. While Plaintiff spells the name "Frye," *see* (ECF No. 1), Defendant Fry spells it "Fry," *see* (ECF No. 35-20). Since Defendant Fry is best situated to know the spelling of his own last name, this Court uses Defendant Fry's spelling.

[2] Although Defendants initially filed notice with the Court saying that they did not intend to pursue exhaustion as an affirmative defense, *see* (ECF No. 24), it is clear from the record that when they filed that notice they were not construing Plaintiff's claims against Defendants Nunziato, Martinez, Bilbrey, Beck, Drumright, and Fry as asserting a retaliation claim. *See* (ECF No. 78). Defendants, moreover, provided Plaintiff with notice of this defense and argument in their Supplemental Motion for Summary Judgment. *See id.* Plaintiff, therefore, had ample opportunity to respond to this specific argument, but did not. Accordingly, the Court concludes that the Defendants *did*

2

evidence of retaliation, and that the Defendants are entitled to qualified immunity. *See* (ECF No. 79). After requesting (and receiving) an extension of time to respond, (ECF Nos. 82, 83), Plaintiff argues that it "was common knowledge, at the time, by the staff, the detainees, and especially by the trustees, who overheard the comments and conversations of the sheriff's deputies, that [he] was being targeted for [his] speaking out against Time Helder and subsequently his deputies for their complete disregard for the law . . . ." (ECF No. 84). Plaintiff argues that "the defendants in this lawsuit regularly and repeatedly harassed and threatened [him] for reporting their multitude of policy and law violations." *Id.* Plaintiff also says that he "has a list of trustees who have stated their willingness to testify on [his] behalf, to confirm that the defendants' actions were done in retaliation to [his] speaking out about their misconduct." *Id.* Plaintiff's response does not include this list of potential witnesses or any affidavits, nor is the response signed under penalty of perjury or notarized. *Id.*

## II.     LEGAL STANDARD

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material only when its resolution would affect the outcome of a case. *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the

---

*not* waive the exhaustion defense with respect to any claim that Defendants Nunziato, Martinez, Bilbrey, Beck, Drumright, and Fry retaliated against him.

record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001). In response, the nonmoving party "may not rest upon mere denials or allegations but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). Here, Defendants argue that summary judgment should be granted because (1) Plaintiff did not first exhaust his administrative remedies with respect to a retaliation claim against the Defendants; and (2) any such retaliation claim fails on the merits. Because this Court finds that Plaintiff failed to properly exhaust his administrative remedies with respect to this claim, this Court recommends that the claim be dismissed without prejudice without reaching the merits of the claim itself. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under [42 U.S.C. § 1997e(a)] and that unexhausted claims cannot be brought in court.").

### III.   EXHAUSTION

Plaintiff is a prisoner, and the factual predicate of his claims stem from his incarceration at the WCDC. *See* (ECF No. 1). Those claims, therefore, are subject to section 1997e(a) of the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e(a). That section – 42 U.S.C. § 1997e(a) – "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions." *Booth v. Churner*, 532 U.S. 731, 733 (2001). This requirement is mandatory. *See Chelette v. Harris*, 299 F.3d 684, 687 (8th Cir. 2000).

#### A.   WCDC Grievance Procedure

Proper exhaustion under Section 1997e(a) "demands compliance with the agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from

4

system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

In this case, the Defendants assert that the Washington County Detention Center Handbook: Rules and Regulations for Detainees ("Detainee Handbook") sets forth the relevant WCDC grievance procedure. (ECF No. 35-12, p. 17). According to the Detainee Handbook, "[a]fter it has been determined that [the detainee] will be kept in detention: [e]ach detainee will read the Detainee Handbook at the booking process. A Detainee Handbook will be available on the kiosk in each cell block." *Id.*, p. 3. The grievance procedure outlined by the Detainee Handbook provides as follows:[3]

> You are allowed to file a grievance if you feel you have been subjected to abuse or an abridgement of your civil rights while being detained. All grievances will be done on the kiosk in your cellblock.
> A grievance must be submitted within ten days from the time the event complained of occurred. The grievance should include:
>
> A. The date and approximate time of the event
> B. The name(s) of the person(s) involved
> C. The name(s) of any witness(es)
> D. Pertinent details of the event
>
> All grievances are reviewed by the Jail Administrator or their designee. If you feel your grievance was improperly handled, you may appeal to the Sergeant or Lieutenant.

(ECF No. 35-12, pp. 17-18).

Plaintiff does not dispute that the Detainee Handbook was available for inmates to access

---

[3] Defendants' Brief in Support of Defendants' Motion for Summary Judgment references the same WCDC grievance procedure, citing to the same document in the court record, but describes the procedure as requiring inmates to submit a grievance within "*eight hours* from the time of the event complained of . . . ." (ECF No. 79, pp. 6-7) (emphasis added). This is clearly a misstatement of the WCDC grievance procedure as described by the WCDC Detainee Handbook. In any event, argument by counsel is not evidence. The issue of timing, moreover, is not in dispute.

5

on the WCDC kiosk system. *See* (ECF No. 84). Further, Plaintiff does not dispute that the grievance procedure, as described by the Detainee Handbook, was the relevant grievance procedure in effect at the time of the events giving rise to his claims. *See id.* Accordingly, the Court considers these facts undisputed for the purposes of Defendants' motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(2).

### B. Plaintiff's Grievances

Defendants argue that while detained at the WCDC, Plaintiff submitted hundreds of kiosk submissions, consisting of 1207 pages. (ECF No. 79, p. 7). In support of their Motion for Summary Judgment, Defendants submitted 109 pages of those kiosk submissions. *See generally* (ECF No. 35-3). Defendants contend (and Plaintiff does not dispute) that these 109 pages of kiosk submissions constitute the entries he submitted from November 17, 2021 (the earliest date alleged in his complaint), until his transfer out of the facility on January 17, 2023, that are relevant to his claims. (ECF No. 79, p. 7). Of these kiosk entries, Defendants direct the Court's attention to four. *See id.* at pp. 7-8.

One, on November 16, 2022, Plaintiff submitted the following request in the "legal services" kiosk category:

> Note that I have mailed a motion for temporary retraining order over the harassment by Frye and his insistence of smearing filth all over my floor with the broom and mop used in filthy cells prior to mine, as well as his other previously reported acts of harassment. Also note that I refused my breakfast as the only way by which I could avoid this issue after pleading with him to skip me with the mop and broom that they would be using starting in cell 13 ([]) and every other cell before coming to me. Please save video from A-1 this morning at approximately 7:30AM showing the toilet paper and other trash swept out of cell 13, noting that they started there and spread the known filth into every other cell (except mine, and I had to refuse a meal to avoid it). I will continue to refuse meals served

> by Frye so long as he insists on harassing me under the guise of "cleaning my cell." My cell is spotless as noted by Captain Ake and many others and I sweep and mop it several times a week, when I am offered cleaning supplies, far more than is necessary in fact, and it remains spotless. Frye is not cleaning anything, he is harassing me and now a Federal judge is going to hear the issue.

(ECF No. 79, pp. 7-8 (citing ECF No. 35-3, p. 86)).

Two, on November 20, 2022, Plaintiff submitted the following in the "personal property" kiosk category:

> Mulvaney, please save video from A-1, 11/20/22 at approximately 7:50AM showing my conversation with Nunziato where I hand him my motion for preliminary injunction addressing the cleanliness failures by the staff and then I show him the WCDC policy manual and the detainee handbook which both outline cleanliness policy and detainee rights. He insisted on sweeping my cell but finally conceded to use a clean broom. I should not have to argue with guards, school them on policy and detainee rights and file lawsuits and injunctions just to have the right to keep my cell clean. Please save video from A-1, 11/20/22 at approximately 7:55 showing trustees removing a food tray and drink cup from cell 13 with feces on them, and then cleaning his cell of the filth, feces, urine and trash. This is the filth that Frye and Nunziato insist on spreading into my cell, which will be addressed in federal court by my motions for restraining orders and preliminary injunctions. Mulvaney, please share this documentation, along with my other grievances and videos addressing the issues of harassment and violations of my rights to clean and sanitary living quarters to Janan Arnold Thomas immediately, as she has been ordered by the court to respond to my motion for TRO and I want to be absolutely sure that she is aware of Fulcher and his habits, the filth which is being spread all over A-1 and the harassment I am enduring by Frye and Nunziato by insisting on spreading this filth into my cell and not allowing me to refuse filthy mops and brooms. This morning I tried to refuse my meal in order to avoid this situation and Nunziato forced the meal on me so that he could justify needing to "clean" my cell. I am being harassed and am going so far as refusing meals in order to try and resist it, and even that is being overcome by the fierce determination by Nunziato that no matter what, I WILL be harassed and I WILL endure it. Be aware that I have written County Attorney Brian Lester, made him aware

(ECF No. 79, p. 8, citing (ECF No. 35-3, p. 88)).

Three, on November 30, 2022, Plaintiff submitted the following in the "grievances" kiosk category:

> I refused my meal this morning because I did not want your filthy hairy mop used in my cell. Bilbrey FORCED me to mop my cell floor, which, as expected left long hairs all over my floor. He then refused to clewn the catwalk where food and drinks were spilled during feeding and tray pickup and also refused to provide a garbage can, so I have nowhere to deposit my trash now, except the floor or a table. Mulvaney, please save video from a minute after this grievance posts of me depositing my trash on a table in the day room and note that there is no garbage can in the cell block. Please save video from about 10 minutes ago showing that nobody cleaned the catwalk. Please save video from about 7:30 AM-7:35AM showing me collecting all the trash out of the showers, toilet area and day room and placing them on a table to show that the cell block was not cleaned last night, I was the first one out this morning.

(ECF No. 79, p. 8 (citing ECF No. 35-3, p. 79)).

Four, also on November 30, 2022, Plaintiff submitted the following in the "grievance category of the kiosk:

> This grievance is against Cpl Caudle Sgt Pineda, Sgt Byrd, Lt M. Arnold, Captain Ake, Major Denzer and Sheriff Elect Jay Cantrell. Let this serve as final exhaustion of the grievance process prior to filing a lawsuit. I have been reporting for a year on the filth of the jail and the staff's refusal to provide a clean, safe and healthy environment through daily practices of sanitation and hygiene. Yesterday I collected samples of the filth in the common areas of cell block A-1 and the mold growing in the drink cups. For months now I have documented that the staff refuse to clean the common areas after meals, that they sweep all the food, hair, trash, etc out into the common areas where it gets left and never fully cleaned up. The detainees are being forced to clean cells that they didn't make dirty in the first place, and they're being punished if they don't act as slave labor. Many are moved from cell to cell, week after week, having their commissary docked for the condition of one cell, then another, then another. You all are hypocrites, hell bent on

> tormenting and punishing the detainee population, most of whom are pre-trial detainees. There is mold growing in the drink cups and drink dispensers. There is mold in the showers and on the cell ceilings and walls caused by non-functional HVAC, roof leaks and plumbing leaks. I have reported numerous clogged toilets and leaking toilet plumbing in multiple cells and cell blocks. This jail is FILTHY! The staff are not abiding by D 9.1 and the housing areas are not being kept clean. The management shows an indifferent failure to properly train and supervise despite my filing of countless grievances and the scores of videos Mulvaney has saved of guards kicking food trays, throwing and kicking drink cups, refusing to clean up their own messes after delivering meals and collecting trays, etc. My cell is the cleanest place in this jail and yet I am being FORCED by Frye, Nunziato and Bilbrey to mop it using filthy hairy mops.

(ECF No. 79, p. 8 (citing ECF No. 35-3, p. 80)).

For his part, Plaintiff does not direct the Court's attention to any *additional* kiosk entries he submitted that are relevant to the claim that Defendants Nunziato, Martinez, Bilbrey, Beck, Drumright, and Fry retaliated against him by spreading feces and urine in his cell. *See* (ECF No. 84). Accordingly, the Court considers the four kiosk entries identified by the Defendants as the closed universe of Plaintiff's kiosk submissions that the parties wish for the Court to consider in determining whether Plaintiff properly exhausted this claim. *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113-14 (8th Cir. 2004) (explaining that the district court is not required to wade through the summary judgment record looking for specific facts that might support the nonmoving party's claim) (citing *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1085 (8th Cir. 1999)).

### C. Analysis of Grievances

Defendants argue that none of these four kiosk submissions properly exhausted the WCDC grievance procedure. *See* (ECF No. 79, p. 10). For his part, Plaintiff argues that it was "common

knowledge" that WCDC officials' behavior towards him was retaliatory. But Plaintiff fails to point to any facts in the record—namely, a kiosk entry showing that he properly exhausted the claim that Defendants Nunziato, Martinez, Bilbrey, Beck, Drumright, and Fry retaliated against him by spreading feces and urine in his cell—in support of this argument. *See* (ECF No. 84). And his response is not signed under penalty of perjury or notarized. Accordingly, in the absence of Plaintiff pointing to any facts in the record showing that there is a genuine material fact dispute, this Court concludes that it is undisputed that none of the kiosk entries identified by the Defendants properly exhausted the WCDC grievance procedure with respect to any retaliation claim against Defendants Nunziato, Martinez, Bilbrey, Beck, Drumright, and Fry. *See Jaurequi*, 173 F.3d at 1085 ("A party opposing a motion for summary judgment may not rest upon the mere allegations or denials of the pleadings, but by affidavits or as otherwise provided in Rule 56 must set forth specific facts showing that there is a genuine issue for trial.") (quoting *Dancy v. Hyster Co.*, 127 F.3d 649, 653 (8th Cir. 1997) (cleaned up)).

The kiosk entries themselves, moreover, bear this out. First, Plaintiff's November 16, 2022, kiosk entry complains of "harassment by Frye and his insistence of smearing filth all over [his] floor with the broom and mop used in filthy cells prior to [his], as well as his other previously reported acts of harassment . . . Frye is not cleaning anything, he is harassing me and now a Federal judge is going to hear the issue." (ECF No. 35-3, p. 86). This kiosk entry fails to exhaust the WCDC grievance procedure because that procedure requires a grievance to include the names of persons involved. *See* (ECF No. 35-12, p. 17). This grievance, therefore, certainly would not satisfy the grievance procedure with respect to a retaliation claim against Defendants Nunziato, Martinez, Bilbrey, Beck, or Drumright. Further, and more to the point, the grievance procedure

requires the grievance to contain the "pertinent details of the event." *Id.* While this grievance asserts that Defendant Fry is harassing Plaintiff by using dirty mops to clean his cell, he does not assert that this harassment was in retaliation for filing grievances or engaging in any other activity.

Similarly, with respect to the second kiosk entry identified by the Defendants, while Plaintiff complains that "Frye and Nunziato" insist on spreading filth in his cell and that he is being "harassed," (ECF No. 35-3, p. 88), he does not detail the basis for this harassment or claim he is being harassed for filing grievances against county officials (or for any other reason).

The same is true regarding the third and fourth kiosk entries identified by the Defendants. Plaintiff's November 30, 2022, grievance asserts that Defendant Bilbrey forced him to mop his cell with a "filthy hairy mop," (ECF No. 35-3, p. 79), but he does not assert that the Defendant Bilbrey intentionally spread urine and feces in his cell, and he does not characterize this conduct as retaliatory. Finally, Plaintiff's second November 30, 2022, grievance, asserts, that Defendants Fry, Nunziato, and Bilbrey force him to use a "filthy hairy mop" to clean his cell, but he does not assert that the Defendants intentionally spread urine or feces in his cell, and, again, he does not characterize their conduct as retaliation. *See* (ECF No. 35-3, p. 80). Thus, the undisputed facts show that Plaintiff failed to exhaust the WCDC grievance procedure with respect to a claim that Defendants Nunziato, Martinez, Bilbrey, Beck, Drumright, and Fry retaliated against him by spreading feces and urine in his cell.

### D. "As Available"

Concluding that Plaintiff failed to properly exhaust his administrative remedies with respect to a retaliation claim against Defendants Nunziato, Martinez, Bilbrey, Beck, Drumright, and Fry for spreading urine and feces in his cell does not end the Court's analysis. *See Smith v.*

*Andrews*, 75 F.4th 805, 808-09 (8th Cir. 2023) (concluding that the district court erred in declining to decide whether administrative remedies were "available" to the plaintiff). To be sure, Section 1997e(a) only requires the exhaustion of administrative remedies "as available" before filing suit. *See* 42 U.S.C. § 1997e(a). "As available," in turn, means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of." *Ross v. Blake*, 578 U.S. 632, 643 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Here, Plaintiff points to no facts in the record suggesting that the WCDC grievance procedure was not available to him to submit a grievance in accordance with WCDC grievance procedures. *See* (ECF No. 84). By contrast, the record shows that Plaintiff entered hundreds of kiosk submissions (sometimes several in the same day) complaining about various conditions of his confinement at the WCDC. *See generally* (ECF No. 35-3). While it appears that the kiosk system may have limited the number of entries Plaintiff could submit in the "grievance" kiosk category, *see* (ECF No. 79, p. 7), the WCDC grievance policy does not explicitly require inmates to submit a grievance under that specific category, *see* (ECF No. 32-12), and in determining whether Plaintiff properly exhausted the WCDC grievance procedure the Defendants considered all the kiosk entries Plaintiff submitted over the relevant period of time, not just those limited to the "grievance category," *see* (ECF No. 79).

For his part, Plaintiff asserts no facts suggesting that the kiosk system itself—the vehicle by which the WCDC grievance procedure directs inmates to convey their grievances—was unavailable to him to access to submit a timely grievance. *See* (ECF No. 84). He points to no facts in the record, for example, that the WCDC kiosk system was unavailable to him to submit a

timely grievance due to some prolonged system failure or some physical or mental incapacity that prevented him from accessing the kiosk system itself. *See Smith*, 75 F.4th at 809 (explaining that administrative remedies are "unavailable" to an inmate when the inmate is unable to timely file a grievance due to some mental or physical disability and the administrative system's rules to not accommodate such a condition). Thus, Defendants' Supplemental Motion for Summary Judgment should be **granted** for Plaintiff's failure to properly exhaust administrative remedies.

## CONCLUSION

Accordingly, for the reasons described above, the undersigned recommends Defendants' Supplemental Motion for Summary Judgment be **GRANTED,** and Plaintiff's claim against Defendants Nunziato, Martinez, Bilbrey, Beck, Drumright, and Fry for retaliating against him by using a mop to spread urine and feces in his cell should therefore be **DISMISSED WITHOUT PREJUDICE**.

ADDITIONALLY,

(1) The Clerk is **DIRECTED** to update the spelling of Defendant Fry's name in the docket to reflect the correct spelling: Fry.

(2) The Clerk is **DIRECTED** to terminate Sam Caudle as a defendant to this action, consistent with Judge Brooks' Order adopting this Court's Report and Recommendations on Defendants' Motion for Summary Judgment, (ECF No. 75).

Plaintiff's claims against Defendants Fry, Beck, Nunziato, Drumright, Bilbrey, and Martinez in their individual capacities for "using the issue of filth to harass and antagonize [him] by forcing themselves into [his] cell with brooms and mops contaminated with urine and feces and spreading it all over [his] floor," (ECF No. 1, p. 12), remain pending and will go forward.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**STATUS OF REFERRAL: No longer referred.**

**RECOMMENDED** this 12th day of March 2025.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE